# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1009V

|  |  |
|---|---|
| STACEY GOODING,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: June 4, 2026 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*James Vincent Lopez, U.S. Department of Justice, Washington, DC, for Respondent.*

## <u>RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES</u>[1]

On March 1, 2021, Stacey Gooding filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] She alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on October 7, 2020. Amended Petition at 1, ¶ 1, 11. The matter was assigned to the "Special Processing Unit" (the "SPU"). ECF No. 17.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner filed an amended petition on October 7, 2022, providing additional detail and medical record citations. ECF No. 21.

For the reasons set forth below, and after briefing by the parties, I find that Petitioner is entitled to compensation, and I award damages in the amount of **$123,805.60**, **representing $122,000.00 for actual pain and suffering, as well as $1,805.60 for past unreimbursed expenses.**

## I.    Factual Findings and Ruling on Entitlement

### A.    Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B.    The Parties' Arguments

Respondent contends that Ms. Gooding has failed to establish pain onset within 48 hours as required for a Table SIRVA. Rule 4(c) Report, filed Oct. 2, 2024, at 6-7, ECF No. 44; *see* 42 C.F.R. § 100.3(a)XIV(B) & (c)(10)(ii) (requiring first symptom and pain

onset specifically within 48 hours of vaccination). Respondent emphasizes the 36-day delay before Petitioner sought treatment, and lack of specificity in her symptoms initiation description. Rule 4(c) Report at 6-7. He also cites Petitioner's portrayal of "waxing and waning symptoms 'after' vaccination." *Id.* at 7.

Although not clearly stated, Respondent also appears to argue that Petitioner has failed to meet the fourth QAI criterion, requiring the absence of a viable alternative cause. Rule 4(c) Report at 7; *see* 42 C.F.R. § 100.3(c)(10)(iv) (requiring that there be no other condition or abnormality that would explain a petitioner's symptoms). Mentioning the type 1 SLAP[5] tear debrided during Petitioner's arthroscopic surgery performed in September 2021, Respondent contends that Ms. Gooding "has not set forth any evidence to demonstrate how this 'condition or abnormality' of a SLAP tear, which could explain her symptoms, is associated with SIRVA and could result from the flu vaccination she received on October 7, 2020." Rule 4(c) Report at 7.

In her brief, Petitioner emphasizes that she consistently linked her left shoulder pain to the flu vaccine she received, showing an uninterrupted causal link and temporal relationship. Petitioner's Brief on Entitlement and Damages ("Brief"), filed July 9, 2025, at 12-14, ECF No. 25. She criticizes Respondent's interpretation of the QAI requirement related to pain onset as incorrect, to the extent Respondent purports it requires granular specificity. *Id.* And citing language in my past rulings observing that it is not uncommon for petitioners to delay seeking treatment, Petitioner insists that her initial 36-day delay before seeking treatment does not undercut the preponderant evidence – including her affidavit, supporting an immediate pain onset. *Id.* at 14-15.

Regarding the fourth QAI criterion, Petitioner insists that "in the greater context of the surgical record, and [P]etitioner's record as a whole, it is clear that [P]etitioner's symptoms stem from her vaccination, and not from a SLAP tear." Brief at 15. Noting that her arthroscopic surgery was performed to repair a partial thickness tear of the supraspinatus, she stresses that her orthopedic surgeon did not identify the SLAP tear until performing surgery. Furthermore, he listed only the rotator cuff tear, impingement, and subacromial bursitis as post-surgical diagnoses. *Id.*

In his response, Respondent reiterated the arguments set forth in his Rule 4(c) Report. Respondent's Response to Brief ("Opp."), filed Sept. 17, 2025, at 7-9, ECF No. 47. Clarifying that he does not expect "petitioners to provide an hourly chronology or to describe their injuries using exact wording of the Table QAI," he nevertheless insists that "specificity becomes even more important the longer a petitioner waits to seek treatment."

---

[5] SLAP stands for Superior Labrum Anterior Posterior. MEDICAL ABBREVIATIONS at 552 (16th ed. 2020).

*Id.* at 7. Noting the location of Petitioner's SLAP tear, he again contends that this condition cannot be associated with the flu vaccine Petitioner received. *Id.* at 8-9.

In her reply, Petitioner criticizes Respondent's interpretation of the term "after" as overly broad, and disputes Respondent's claim that her initial delay of only one month undermines her assertion of immediate pain onset. Petitioner's Reply to Opp. ("Reply"), filed Oct. 20, 2025, at 3-4, ECF No. 48. She also maintains that her SLAP tear – characterized as a common, unconnected, and inconsequential condition for a SIRVA, was asymptomatic, and thus, would not qualify as a viable alternative cause. *Id.* at 4-5. She emphasizes that her treating physicians did not mention the SLAP tear as a potential cause of her symptoms, and her primary care provider ("PCP") diagnosed her with a SIRVA. *Id.* at 4-5 (citing Ex. 2 at 19).

### C.    Factual Finding Regarding QAI Criteria for Table SIRVA

A review of the record in this case reveals preponderant evidence sufficient to establish the required pain onset. Petitioner's failure to mention any symptoms during the initial 36 days post-vaccination was reasonable. As I have stated on numerous occasions, individuals suffering from vaccine-related symptoms will often delay seeking treatment for at least a few weeks, believing that their symptoms will resolve on their own. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 22-1396V, 2024 WL 3026843, at *6 (Fed. Cl. Spec. Mstr. May 15, 2024). Thus, this delay is not enough alone to defeat a favorable onset finding.

Similarly, Petitioner's description of pain that occurred "after" vaccination, or "waxed and waned," does not prevent her from establishing the needed pain onset close-in-time to vaccination. Petitioner consistently described a concurrent pain onset, and linked her symptoms to her flu vaccine at appointments thereafter. Ex. 2 at 15, 19, 21; Ex. 3 at 56, 45 (in chronologic order); Ex. 4 at 28, 31; Ex. 7 at 10. There is preponderant evidence to show Petitioner's pain began within 48 hours of vaccination, and she has satisfied the second QAI criterion.

I also reject Respondent's contention that evidence of the SLAP tear - which appears to have been asymptomatic and only discovered during surgery - prevents Petitioner from satisfying the fourth QAI criterion. Had this condition been the only potential source for Petitioner's shoulder pain, or had been identified and/or treater prior to vaccination, Respondent's argument would be more persuasive. But the MRI (performed on January 18, 2021) showed Petitioner suffered from "[m]inimal tendinopathy at the distal supraspinatus tendon [and] [t]iny partial-thickness intrasubstance tear at the superior muscular tendinous junction of the subscapularis." Ex. 4 at 29. These findings thus revealed a comorbid, sub-acute condition that may have been aggravated by the flu

vaccine, which was the more likely source of Petitioner's symptoms and impetus for her arthroscopic surgery. Ex. 5 at 13, 15-16 (noting tenderness over subacromial space, failure of conservative treatment, and need for surgery). Although the fact that Petitioner also had a SLAP tear which was repaired during surgery[6] would be relevant to the question of damages if symptomatic, its presence does not amount to an alternative explanation absent other evidence corroborating its role.

Respondent has raised no other entitlement objection, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii). There is no evidence of prior left shoulder symptoms or a current condition. *See, generally,* Ex. 2 (PCP records). Additionally, Petitioner's pain and decreased range of motion were limited to her left shoulder. *See,* e.g.*,* Ex. 3 at 38-49 (initial physical therapy ("PT") session). Thus, all elements of a Table SIRVA claim have been preponderantly established.

### D.    Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

## II.    Compensation to be Awarded

### A.    Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *Staub v. Sec'y of Health & Hum. Servs.*, No. 23-1611V, 2026 WL 800520, at *1-3 (Fed. Cl. Spec. Mstr. Mar. 4, 2026).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y*

---

[6] During the procedure, the surgeon also observed a "[s]ignificant amount of subacromial and subdeltoid bursitis" and a "degenerative labral tear . . . anteriorly and superiorly." Ex. 6 at 16.

*of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at \*22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[7]

### B.    Parties' Arguments

The parties agree Petitioner should be awarded $1,805.60 for past unreimbursed expenses. Brief at 1, 17, 29-30; Opp. at 10; Reply at 13. Their only area of disagreement is the amount of compensation which should be awarded for Petitioner's past pain and suffering. Petitioner seeks $140,000.00, and Respondent argues for an award of $100,000.00. Brief at 1, 17; Opp. at 10, 19, 21; Reply at 13.

Characterizing her SIRVA as "severe and debilitating," Petitioner insists that "[t]he medical records in this case paint a clear picture of [her] rapid and severe SIRVA onset, followed by an extensive course of treatment that has ultimately produced mixed results and continued suffering." Brief at 20. She asserts that "[t]he persistence of her symptoms . . led [her] to receive acute care over the next three years" (*id.* at 19) – including three steroid injections, x-rays, an MRI, arthroscopic surgery, and at least 30 physical therapy ("PT") sessions (*id.* at 20-21). Maintaining that she continues to suffer from soreness and lack of strength (*id.* at 20), Petitioner contends that "none of the treatments that [she] received have led to her full recovery" (*id.* at 21).

Petitioner favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Rafferty, Binette, Dawson-Savard,* and *Reed*[8] - decisions featuring awards ranging from $127,500.00 to $160,000.00, with the *Dawson-Savard* and *Binette* petitioners also receiving future pain and suffering awards. Brief at 23-26. Insisting that her arthroscopic surgery was unsuccessful, she contends that all four cases offer helpful guidance despite *Binette* and *Dawson-Savard* being non-surgical cases. *Id.* Petitioner argues that her award should be greater than the $127,500.00 awarded the *Rafferty* petitioner, as well as what was awarded in multiple other surgical

---

[7] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at \*9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at \*3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[8] *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering); *Binette v. Sec'y of Health & Hum. Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. July 8, 2019) (awarding $130,000.00 for past pain and suffering and $1,000.00 per year for future pain and suffering); *Dawson-Savard v. Sec'y of Health & Hum. Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020) (awarding $130,000.00 for past pain and suffering and $500.00 per year for future pain and suffering); *Rafferty v. Sec'y of Health & Hum. Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for past pain and suffering).

cases (*Wallace, Dobbins, Roberson, Stokes,* and *Drake*),[9] because she suffered post-surgical pain levels equivalent to, or even greater than, those experienced by the *Reed* petitioner. Brief at 26-27. And Petitioner asserts that the $140,000.00 she requests is in line with the awards in numerous cases involving an informal agreement between the parties and the remedial purpose of the Vaccine Act. *Id.* at 27-29.

To support the lower award which he advocates, Respondent contrasts Petitioner's assertions with the evidence provided by the medical records which he insists reveal a lower symptom severity and duration. Opp. at 11-16. He emphasizes specific findings observed upon examination and several gaps in treatment when Petitioner returned for further treatment later than instructed, claiming this shows a milder SIRVA. *Id.* To establish a shorter overall duration, Respondent emphasizes the lack of pain and normal range of motion ("ROM") Petitioner reported in January 2022,[10] less than four months post-surgery. Opp. at 16.

Furthermore, Respondent attributes some of Petitioner's pain to unrelated conditions, such as the SLAP tear repaired during her September 2021 surgery and Petitioner's reports of overuse in 2022. Opp. at 15-16. And he discounts Petitioner's complaints made in November 2023, noting they occurred after a fifteen-month treatment gap, were made "during the pendency of this action," and did not result in any no follow-up care. *Id.* at 14.

Respondent distinguishes the cases cited by Petitioner, emphasizing the greater pain severity and impairment suffered by those petitioners, including those in the surgical cases involving awards of $125,000.00. Opp. at 16-19. He describes *Binette* as particularly "inapposite" because her condition was determined to be permanent and she "was determined to not be a candidate for surgical intervention." *Id.* at 17. Instead, Respondent proposes *Hunt, Shelton,* and *McCabe*[11] - featuring awards ranging from $95,000.00 to $110,000.00.

---

[9] The petitioners were awarded $125,000.00 for past pain and suffering in the following cases: *Wallace v. Sec'y of Health & Hum. Servs.,* No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019); *Dobbins v. Sec'y of Health & Hum. Servs.,* No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018); *Roberson v. Sec'y of Health & Hum. Servs.,* No. 19-0090V, 2020 WL 5512542 (Fed. Cl. Spec. Mstr. Aug. 7, 2020); *Stokes v. Sec'y of Health & Hum. Servs.,* No. 19-0752V, 2021 WL 16550888 (Fed. Cl. Spec. Mstr. Dec. 17, 2021); *Drake v. Sec'y of Health & Hum. Servs.,* No. 18-1747V, 2020 WL 4674105 (Fed. Cl. Spec. Mstr. July 7, 2020).

[10] Although Respondent refers to January 202*3*, rather than 202*2*, this is clearly due to a simple mistake. Opp. at 16. He also describes these findings as observed "less than four months after surgery" (*id.*) and the medical records show these findings were included in the medical record from a January 2022 visit (*see* Ex. 5 at 4).

[11] *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for past pain and suffering); *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-0279V, 2021 WL 4719291 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for past pain and

In her reply, Petitioner reiterates why the facts and circumstances in the cases she cited are similar to those experienced by Petitioner. Reply at 8-10. She also provides an additional comparable case, *Jacob*[12] – featuring an award of $120,000.00 - remarking that the *Jacob* petitioner experienced an even longer treatment gap of three years before returning for treatment after filing his claim. Reply at 6-7. Petitioner criticizes the comparable cases cited by Respondent, noting the initial treatment delay in *Shelton* was much longer, approximately five months post-vaccination; and that the pain experienced by the *Hunt* and *McCabe* petitioners was less severe. *Id.* at 7, 10-12.

### C.    Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The medical records show that Ms. Gooding suffered a moderate SIRVA involving pain levels ranging from three to six, and *almost* full, albeit painful, ROM for approximately five months post-vaccination.[13] Although she gained no relief from conservative treatment (including two steroid injections) through early March 2021,[14] she obtained some

---

suffering); *McCabe v. Sec'y of Health & Hum. Servs.,* No. 19-1916V, 2021 WL 6755494 (Fed. Cl. Spec. Mstr. Feb.1, 2022) (awarding $110,000.00 for past pain and suffering).

[12] *Jacob v. Sec'y of Health & Hum. Servs.,* No. 21-1997V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. July 17, 2025).

[13] Petitioner initially complained of waxing and waning pain and full, albeit tender, ROM during a visit to her PCP on November 12, 2020, 36 days post-vaccination. Ex. 2 at 17-21. She consistently reported those same pain levels and difficulties with ROM during orthopedic visits in January 2021, and her initial PT evaluation on March 3, 2021. Ex. 3 at 38; Ex. 4 at 18, 21, 28, 31, 34.

[14] Petitioner was administered steroid injections by her PCP on November 12, 2020, and her orthopedist on January 27, 2021. Ex. 2 at 19; Ex. 4 at 22. Between these injections, she was prescribed a Medrol Dosepak ad Volteran gel. Ex. 4 at 34. Petitioner consistently reported no relief from this treatment. Ex. 4 at 31; Ex. 3 at 45.

improvement from two months of PT thereafter.[15] By her eighth and last PT session, her pain level was three, and she was assessed as having met approximately 50 percent of her goals. Ex. 7 at 7.

Following a four-month gap in treatment, Petitioner sought treatment from an orthopedic surgeon in late August 2021. Ex. 5 at 13-17; *see* Ex. 9 at ¶ 25 (sworn declaration explaining Petitioner requested this referral to obtain a second opinion). It was noted that her pain (assessed as three out of ten) continued but her ROM had improved. *Id.* at 13. Although Petitioner's orthopedist did not believe surgery would be helpful,[16] she discussed this option with the orthopedic surgeon. Ex. 5 at 16.

During the September 22, 2021 surgery - scheduled to repair a small tear of the supraspinatus - the surgeon also discovered and addressed significant subacromial and subdeltoid bursitis and a type 1 SLAP tear. Ex. 6 at 15-16; *see* Ex. 4 at 28 (MRI results). Following surgery, Petitioner gained significant improvement in pain severity and ROM while attending 17 PT sessions.[17] By a follow-up appointment with her surgeon on March 3, 2022, approximately 17 months post-vaccination and five months post-surgery, Petitioner reported continued soreness and weakness but no pain and "some mild persistent subacromial impingement." Ex. 8 at 1.

When Petitioner returned for further PT in late July 2022, she acknowledged experiencing "total relief" for four to five months but reported her highest pain levels to date – currently six to seven and eight to nine at its worst. Ex. 10 at 1. Although she was assessed as needing one to two sessions for six to twelve weeks (*id.* at 30), Petitioner attended only two sessions on July 19 and 22, 2022. *See* Ex. 10. At both PT sessions, she attributed her symptoms to physical activity – opening beers and moving a picnic table. And Petitioner did not visit her orthopedic surgeon again until October 30, 2023, approximately 15 months later and almost 33 months after the claim's filing, reporting

---

[15] During eight PT sessions attended from March through April 2021, Petitioner's pain level quickly decreased from three to six to no pain by her second PT session. *Compare* Ex. 3 at 40, 56 *with id.* at 36. It then gradually increased to three. Ex. 3 at 32, 24, 20, 12; Ex. 7 at 1, 3, 5 (in chronologic order). And her limitations in ROM also improved. Ex. 3 at 41-42, 25; Ex. 7 at 1, 3, 5-6 (in chronologic order).

[16] Observing that Petitioner's pain "now [wa]s more posterior and lateral right over the area where she had her previous steroid injection" (Ex. 4 at 18), Petitioner's initial orthopedist opined that he "d[id] not see anything surgical on the MRI at this time (*id.* at 22) However, he recommended "a steroid injection into the subacromial space and see if a component of her pain is actually coming from the partial-thickness tear in the subscapularis." *Id.*

[17] By her 17th PT session, Petitioner's ROM had improved significantly, and her pain level had decreased to three. Ex. 7 at 47-49. In her sworn declaration, Petitioner stated that she ceased PT in late December 2021, due to a lack of insurance. Ex. 9 at ¶ 41. However, she also acknowledged feeling better, experiencing decreased, and sometimes no pain, and little difficulty dressing and showering. *Id.* at ¶ 39.

10

uncomfortable aching pain at a level of two. Ex. 11 at 1. Although the orthopedic surgeon ordered an MRI, it does not appear that Petitioner pursued this additional testing. *Id.* at 4.

I do not find the parties' continued reliance on the following cases to be useful: *Reed, Dawson-Savard,* and *Binette* for Petitioner, and *Hunt* and *Shelton* for Respondent. Due to the severe pain she experienced, the *Reed* petitioner continued to require prescription pain medication for years post-surgery. *Reed,* 2019 WL 1222925, at *8-9. And the *Dawson-Savard* and *Binette* petitioners were assessed as having permanent disabilities and no surgical option. *Dawson-Savard,* 2020 WL 4719291, at *3-4; *Binette,* 2019 WL 1552620, at *8, 13-15. The *Shelton* petitioner did not seek treatment initially until five months post-vaccination, and the *Hunt* petitioner gained significant, albeit temporary, pain relief from multiple steroid injections. *Shelton,* 2021 WL 2550093 at *7; *Hunt,* 2022 WL 2826662, at *9.

I agree, however, that *McCabe, Jacob, and Rafferty* - featuring awards of $110,000.00, $120,000.00, and $127,500.00, respectively - offer helpful guidance. *Jacob,* 2022 WL 2826662; *McCabe,* 2021 WL 6755494; *Rafferty,* 2020 WL 3495956. Because the *Jacobs* petitioner experienced the most similar pain levels, also had a SLAP tear likely responsible for some ongoing symptoms, and complained of continued difficulties but failed to pursue significant treatment, I find that case to be the closest to Petitioner's circumstances. *Jacob,* 2022 WL 2826662, at *2-3. Thus, I find that Petitioner should receive a past pain and suffering award of $122,000.00.

## Conclusion

For all the reasons discussed above, and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA.** Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $**122,000.00** represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[18] I also find that Petitioner is entitled to **$1,805.60** in actual unreimbursable expenses.

**I therefore award Petitioner a lump sum payment of $123,805.60, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

---

[18] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[19]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[19] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.